**RHONE–POULENC RORER INC., and Armour Pharmaceutical Co.**

v.

**The HOME INDEMNITY COMPANY**

v.

**AETNA CASUALTY & SURETY CO., et al.**

v.

**CITY INSURANCE COMPANY, et al.**

No. 88–9752.

United States District Court,
E.D. Pennsylvania.

Oct. 1, 1991.

Jill A. Douthett, Philadelphia, Pa., Nancy E. Stuart, for Rhone–Poulenc Rorer, Inc., et al.

Louis E. Bricklin, Illene G. Greenberg, Bennett Bricklin & Saltzburg, Philadelphia, Pa., for John Barrington Hume & Insco, Ltd.

Jeffrey B. Albert, Wendy Fleishman, Stephanie Resnick, Timothy D. Mara, James W. Christie, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Home Indem. Co.

Stephen A. Cozen, Susan M. Danielski, Richard C. Bennett, Cozen and O'Connor, Philadelphia, Pa., for Revlon, Inc., and Pantry Pride, Inc.

Mark A. Dombroff, John K. Henderson, Jr., Katten Muchin, Zavis & Dombroff, Washington, D.C., Margolis, Edelstein, Scherlis Sarowitz and Kraemer, B. Alan Dash, Philadelphia, Pa., for Birmingham Fire Ins. Co., Aiu Ins. Co., New Hampshire Ins. Co., Granite State Ins. Co., National Union Ins. Co., Lexington Ins. Co., Insurance Co. of the State of Pa.

Joseph M. Oberlies, Connor and Weber, P.C., Philadelphia, Pa., for American Centenial Ins. Co.

James A. Young, Philadelphia, Pa., Hartford, Ins. Co., Twin City Ins. Co., First State Ins. Co. and New England Reinsurance Co.

Edward M. Dunham, Jr., Miller, Dunham, Doering & Munson, Philadelphia, Pa., for Aetna Cas. & Sur. Ins.

## MEMORANDUM

EDWIN E. NAYTHONS, United States Magistrate Judge.

Plaintiffs, Rhone–Poulenc Rorer, Inc. and Armour Pharmaceutical Company as well as fourth-party plaintiff Revlon, Inc. (collectively, the policyholders) have filed their Motion to Compel seeking information concerning the insurers' reinsurance for the claims made in the underlying AIDS-related litigation, and the reserves which the insurers have set for the underlying claims, all of which are now being withheld

on grounds of irrelevance, burden, privilege and confidentiality.

The policyholders have requested information and documents concerning the insurers' reinsurance on the policies that they have issued to the policyholders. Interrogatory No 2 of the Plaintiff's and Fourth–Party Plaintiff Revlon, Inc.'s Second Set of Interrogatories directed to all insurance company third-party and fourth-party defendants asks the insurers to

"[i]dentify each person that provided reinsurance, either facultative or treating for each insurance policy that you issued to Revlon and/or Armour."

Similarly, Request No. 2 of the plaintiffs' and fourth-party Revlon, Inc.'s Second Request for Production of Documents Directed to All Insurance Company third-party and fourth-party defendants seeks

"[a]ll documents concerning reinsurance related directly or indirectly to each insurance policy that you issued to Revlon and/or Armour, including facultative reinsurance or treating reinsurance."

Likewise the policyholders have also requested information and documents concerning the reserves that the insurers have created for the underlying AIDS-related claims. Request No. 10 of Plaintiffs' and fourth-party plaintiff Revlon, Inc.'s second request for production of documents directed to all insurance company third-party and fourth-party defendants seeks:

"All documents concerning your rationale for establishing or not establishing reserves for AIDS-related or blood derivative claims asserted against:

a. Rorer, Revlon and/or Armour; or
b. Any other policyholder or insured."

Again, the insurers have responded by objecting on the same ground that the request is irrelevant, unduly burdensome, not reasonably calculated to lead to the discovery of relevant evidence, constitutes confidential business or proprietary information, or calls for disclosure of information protected by the attorney-client or work-product privileges, and because it asks, in part, for information about other insureds.

## I.

## DISCUSSION

As the defendants have indicated in their citing of *Monsanto Company v. Aetna Casualty & Surety Co.*, C.A. No. 88C–JA–118–1–CV (Super.Ct. of Del.) reinsurance is an insurers' effort to secure indemnification from another insurer against loss of or liability because of a risk assumed by the initial insurer under a contract between it and a third person. Reinsurance has been said to be the means by which an insurer can spread the loss incurred from an insured risk. Reinsurance also may permit the insurer to reduce its reserve requirement or to have it treated as an asset on financial statements. *19 Couch On Insurance 2d* § 80:2; *State of Florida ex rel. O'Malley v. Department of Insurance*, Ind.App., 291 N.E.2d 907 (1973); *American Re–Insurance Co. v. Insurance Commission of the State of California*, D.Cal., 527 F.Supp. 444 (1981); *Skandia American Reinsurance Corp. v. Schenck*, D.N.Y., 441 F.Supp. 715 (1977). The defendants argue that insurers should be unimpeded in their effort to obtain internal financial security and should not be fearful that the reinsurance process will be used against them in coverage litigation; that the discovery of reinsurance files opens the door to a variety of too many other interpretations and that whatever possibility of relevance there may be is too remote, and not required by the needs of this particular case.

Initially, I note that in *Occidental Chemical Corp. v. Hartford Accident & Indemnity Co., et al*, Index No. 41009/8D (N.Y. Supreme Ct., December 4, 1990), the court recognized "... the contract of insurance embodies the exclusive mutual agreement of the parties ..." Therefore, discovery concerning reinsurance agreements to which the plaintiffs were not parties would "... not assist in the determining of the mutual intent of the parties in the primary and excess insurance policies issued to the plaintiffs, which are in litigation in this case. Any information regarding reinsur-

ance would at best be evidence of undisclosed unilateral intention, which would not be material to the interpretation of the insurance contract at issue." (See Exhibit 2, section entitled "Reinsurance Contracts", page 5 attached to Defendant's Memorandum of Law.)

■ In the instant case, there has been no finding to date of any ambiguity in defendant's policies and, therefore, discovery into extrinsic evidence such as reinsurance documents or information should not and will not be permitted. As this United States Magistrate Judge recognized in its Opinion of June 11, 1991 on the issues of "drafting history" and "other insureds", the appropriateness of such discovery should not even be an issue unless and until there has been a finding by the District Court that one or more of the provisions of the policies at issue is ambiguous. I therefore find that the issue of reinsurance should not be before this Court unless and until there has been a finding by the District Court "of ambiguity".

The necessity of a finding of ambiguity before such information is even arguably relevant was recognized by Senior Judge Van Artsdalen in his decision in the case of *In re Texas Eastern Transmission Corp.*, No. MDL 76D4 (ED Pa., July 26, 1989) in which he stated at page 15 of the court's decision that there first must be a holding that a policy is ambiguous and therefore subject to admission of extrinsic evidence of intent before reinsurance information is arguably relevant. Even then, the court found that it was only tenuously relevant and held that "the insurers need not provide any information as to the amount of any reinsurance or the identity of any reinsurer or even the fact of reinsurance." (Opinion at page 15, lines 15–21). Judge Van Artsdalen found that the only material which might be relevant would be information expressing an opinion or stating a position as to an insurer's interpretation of a policy at issue and even that might be subject to privileges or confidentiality protection. (Opinion at page 16, lines 3–4). Further, Judge Van Artsdalen stated that under the facts of the case before him,

Rule 26(b)(2) of the Federal Rules of Civil Procedure did not mandate that the insurers disclose any reinsurance agreements. (Opinion at page 16, lines 21–24.)

Likewise in *Leski, Inc. v. Federal Insurance Company*, 129 F.R.D. 99, 106 (D.N.J.1989) the court recognized that the alleged relevance of reinsurance information, if any, is "very tenuous" because the reinsurance decision is based on "business considerations and not questions of policy interpretation." It should also be noted that reinsurance materials contain confidential business information regarding the pricing and coverage of reinsurance policies, which, if revealed to competitors, including (co-defendants herein) could damage the insurance carriers ability to compete in the reinsurance market as well as harm present business relationships with reinsurers. R. Mehr, *Principles of Insurance*, § 605 (7th ed. 1980).

The plaintiffs rely heavily on *National Union Fire Insurance v. Continental Illinois Corp.*, 116 F.R.D. 78 (N.D.Ill., 1987) for the court's granting of their motion. It should be noted that the *National Union* case dealt primarily with insurers' communications with their reinsurer regarding risks under the director's and officers' policies with the bank. Therefore, these communications were discoverable in an action that was brought by the insurers to rescind the policies due to the bank's alleged misrepresentations as to its true financial condition, where the communications could clearly reveal what financial information the insurers relied upon in deciding to issue the policies. In *National Union, supra,* the court properly held that the identity of risk-sharing reinsurers and reinsurance agreements were discoverable and relevant in regard to assessment of risk, and, in order to understand the significance of those communications, the reinsurance agreements would be needed and were therefore highly relevant.

■ Plaintiffs also rely on the language of Fed.R.Civ.P. 26(b)(2), concerning the discoverability of insurance agreements. That rule states:

A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgement which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgement.

Plaintiffs argue that reinsurance agreements fall under this rule and are automatically discoverable. They cite in support of this proposition *Potomac Electric Power v. California Union Insurance,* 136 F.R.D. 1 (D.D.C.1990). In that case, the plaintiffs sued for over six and a half million dollars in damages for cleanup and defense costs stemming from a PCB contamination lawsuit. The plaintiffs sought reinsurance information, including communications and other documents in addition to the agreements themselves. In granting the plaintiffs request for the agreements, the District Court cited the language of Rule 26(b)(2). The court refused, however, to grant plaintiffs' motion for communications and other documents outside the agreements themselves, stating that such information would comprise a "fishing expedition" and lacked "sufficient indicia of relevance". *Id.,* at 3.

Accepting arguendo the reasoning of the *Potomac* Court in finding that Civ.R.Fed.P. 26(b)(2) mandated that the reinsurance agreements in that case were discoverable, I find the factual situation to be dissimilar to that presented by the motion before this Court. The relief sought by plaintiffs in the instant case is primarily in the form of a declaratory judgement. Since rule 26(b)(2) specifies that only insurance agreements which may cause the insurer to be "liable to satisfy part or all of a judgement which may be entered in the action ...", this distinction is important.

Since the primary relief sought in this case is a declaratory judgement, I find the reasoning of Judge Van Artsdalen *In re Texas Eastern Transmission Corp., supra,* to be more persuasive. In that case, the relief sought was also declaratory in nature. Judge Van Artsdalen noted that because no money award, other than possibly attorney's fees were sought in that case, rule 26(b)(2) did not mandate that the insurers disclose any reinsurance treaties, agreements or contracts. Similarly, in the instant case, declaratory relief is sought against all the insurers. Although plaintiffs note that they seek money damages from *some* of the insurers, they do not specify which insurers are the targets of such demands, or how much of an award is sought. I find that consistent with Judge Van Artsdalen's opinion, that such vague and limited monetary demands are insufficient to bring the reinsurance agreements under the scope of rule 26(b)(2).

In addition, as I noted previously, reinsurance is a means by which an insurer can spread the loss incurred from an insured risk. *See 19 Couch on Insurance 2d,* § 80:2; *State of Florida ex rel. O'Malley v. Dept. of Insurance, supra.* Because of this unique relationship between an insurer and a reinsurer, whatever link may exist between reinsurance and Fed.R.Civ.P. 26(b)(2) is further weakened.

## II.

### RESERVE DOCUMENTS & INFORMATION

■ Turning to the issue of reserves, after a thorough study of the memoranda and recorded authorities, this Magistrate Judge concludes that the Motion to Compel as to this issue should be DENIED as seeking information of very tenuous relevance, if any relevance at all, as well as constituting work-product material.

This Court is persuaded by the argument of counsel for Prudential Reinsurance Company and Gibraltar Casualty Company that a reserve essentially reflects an assessment of the value of the claim taking into consideration the likelihood of an adverse judgment. Such estimates of potential liability do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis. This basic characteristic of reserve information was recognized by the court in *Union Carbide Corp. v. Travelers Indemnity Co,* 61 F.R.D. 411 (W.D.Pa.1973) which noted that internal

opinions and conclusions are not discoverable. Where the reserves have been established based on legal input, the results and supporting papers most likely will be work-product and may also reflect attorney-client privilege communications.

Although these ·risk management documents being sought by plaintiffs may not have in themselves been prepared in anticipation of litigation, they may be protected from discovery to the extent that they disclose the individual case reserves calculated by defendants' attorneys. The individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in anticipation of litigation, and consequently, they are protected from discovery as opinion work-product. *Hickman v. Taylor,* 329 U.S. 495, 512, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947); *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977).

Since the Supreme Court's decision in *Hickman v. Taylor, supra,* the courts have recognized that particular solicitude is given mental impression/opinion work-product as contrasted to the ordinary work-product protection accorded other documents and materials prepared in anticipation of litigation. In *Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the Supreme Court recognized mental impression/opinion work-product as "deserving special protection" under Rule 26. *Id.* at 400, 101 S.Ct. at 688. The court considered, but found unnecessary to decide, whether any showing of necessity could ever overcome the protection afforded such work-product. It recognized, however, that simply showing "substantial need and inability to obtain the equivalent without undue hardship" is not sufficient. *Id.* at 401, 101 S.Ct. at 688. In *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986), the court observed that the work-product doctrine protects not only materials obtained or prepared in anticipation of litigation, "but also the attorney's mental impressions, including thought processes, opinions, conclusions and legal theories." *Id.* at 1328; *see also Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.) ("Rule 26(b)(3) recog-nizes the distinction between ordinary and opinion work-product first articulated by the Supreme Court in *Hickman v. Taylor"),* cert. denied, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985).

In the present case, by raising the work-product privilege, the defendants ask me to protect mental processes that go to the essence of the lawyers expertise—establishing the value of a legal claim and the fees and expenses that may be incurred in its defense. The litigation's ultimate cost to the client has great significance in determining whether a lawsuit will be tried or settled and, if settled, for what amount. Establishing the value of a claim is analytically complex, requiring an assessment of the body of evidence and the particular legal issues involved in each case, as well as an evaluation of the case's strengths and weaknesses. It is one of the more challenging and difficult tasks a lawyer confronts. *In Work–Product of the Rulesmakers,* 53 Minn.L.Rev. 1269 (1969), Professor Edward H. Cooper discusses the importance of an attorney's private evaluation of a claim in facilitating the bargaining process inherent in our system of justice:

"Some of the areas in which the work-product doctrine forecloses discovery are easily comprehended ... as well. One obvious example is the need for protection against forced revelation of a party's evaluation of his case; as long as voluntary settlement is encouraged, it would be an intolerable intrusion on the bargaining process to allow one party to take advantage of the other's assessment of his prospects for victory and an acceptable settlement figure. *Id.* at 1283.

Thus, the aggregate reserve figures may give some insight into the mental processes of the lawyers in setting specific case reserves. This is inevitable, considering that these aggregates and averages are based upon the attorney's evaluations of the value of specific claims. Notably, this is not a situation where mental impressions are merely contained within and comprise a part of another document and can easily be redacted. Instead, the aggregate and average figures are derived from and necessar-

ily embody the protected material. They could not be formulated without the attorney's initial evaluations of specific legal claims. Thus it is impossible to protect the mental impressions underlying the specific case reserves without also protecting the aggregate figures.

It can be argued, of course, that while this Court is protecting the mental impression/opinion work product concerning the attorney's evaluation of the reserve necessary for each lawsuit that I should not grant similar protection to any risk management department's opinion work-product concerning an aggregate reserve necessary for the underlying litigation. I find no basis in Rule 26(b)(3) for this distinction. Rule 26(b)(3) requires a court to "protect against disclosure of the mental impressions, conclusions opinions or legal theories of an attorney *or other representative* of a party concerning the litigation." Federal Rule of Civil Procedure 26(b)(3) (emphasis added.) Thus protective work product is not confined to information or materials gathered or assembled by a lawyer. Instead, it includes materials gathered by any consultant, surety, indemnitor, insurer, agent, or even the party itself. Federal Rule of Civil Procedure 26(b)(3). The only question is whether the mental impressions were documented, by either a lawyer or non-lawyer in anticipation of litigation.

Finally, it should be stated that a party, in managing its litigation, should not be forced to provide materials to its opponent that necessarily reflect its lawyers' mental impressions regarding the litigation and containing its agents' mental impressions concerning the cost of the litigation. Were I to hold that the documents are discoverable as only indirectly reflecting the attorneys' impressions because they might be created for business planning purposes, such a holding would make it extremely hazardous for a business to finance and plan for its defense. The incidental effect of such a decision could be the failure of litigants to properly document and consider all the factors that bear upon the decision to try or settle lawsuits. Cf. *Hickman v. Taylor*, 329 U.S. at 511, 67 S.Ct. at 393

("Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten."). These documents based on mental impressions of its lawyers and representatives concerning litigation, strategy and costs may be of limited value, but they should not be the subject of discovery.