689 S.E.2d 796

**STATE of West Virginia ex rel. MAR-SHALL COUNTY COMMISSION and Marshall County Communication 911, Petitioners**

**v.**

**Phyllis H. CARTER, Administrative Law Judge, West Virginia Human Rights Commission and John R. Briggs, Respondents.**

No. 35272.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 2010.

Decided Jan. 29, 2010.

Concurring Opinion of Justice Workman Feb. 1, 2010.

Thomas E. Buck, Esq., Jason P. Pockl, Esq., Bailey & Wyant, Wheeling, WV, for Petitioners.

Darrell V. McGraw, Jr., Esq., Attorney General, Jamie S. Alley, Esq., Senior Assistant Attorney General, Civil Rights Division, Charleston, WV, for Respondents.

BENJAMIN, Justice:

The petitioners and defendants below, the Marshall County Commission and Marshall County Communication 911, seek extraordinary relief to prevent the enforcement of an order entered by Respondent Chief Administrative Law Judge Phyllis H. Carter in a claim brought by Respondent John R. Briggs under the State Human Rights Act. The order complained of by the petitioners directs them to produce for *in camera* inspection by the administrative law judge an audio recording of an executive session meeting in which the petitioners discussed hiring an applicant to fill one of two vacancies in the Marshall County Communication 911 Department. The petitioners argue before this Court that the audio recording in question is protected from disclosure for the purpose of an *in camera* inspection by an executive session privilege, the attorney-client privilege, and the work product doctrine. For the reasons that follow, we deny the writ requested.

## I.

### FACTS

In December 2007, Petitioner Marshall County Communication 911 advertised for applications to fill two telecommunication operator positions. Several applications were received and several applicants, including Respondent John R. Briggs, were interviewed for the positions. Mr. Briggs, who is legally blind, subsequently was informed that he would not be hired for one of the available positions.

Mr. Briggs thereafter filed a complaint with the State Human Rights Commission alleging discrimination based on his disability. According to the complaint, Mr. Briggs informed the Marshall County Commission that several options were available for accommodating his disability. Mr. Briggs alleged that he is well qualified to be a telecommunication operator and has several years experience in that position. Mr. Briggs concluded that the fact that he was not hired despite his experience and qualifications indicates that he was discriminated against because of his disability in violation of the State Human Rights Act.[1]

During discovery, in preparation for proceedings before an administrative law judge (hereafter "ALJ"), Mr. Briggs requested a copy of any recording of the executive session in which the Marshall County Commission discussed filling the final telecommunication operator position. The petitioners objected to the production of an audio recording of the session pursuant to an alleged executive session privilege, the attorney-client privilege, and the work product doctrine. After a hearing on the matter, the ALJ assigned to hear the case decided to conduct an *in camera* review of the requested recording to determine whether and/or to what extent the recording contained privileged material.

The petitioners thereafter filed a motion for declaratory judgment and an appeal of the ALJ's decision in the Circuit Court of Marshall County. This petition was dismissed on jurisdictional grounds. The petitioners also appealed the ALJ's decision to the Commissioner of the Human Rights

---

1. The Human Rights Commission conducted an investigation into Mr. Briggs' complaint and determined that probable cause existed to credit Mr. Briggs' allegations of unlawful discrimination. Once the determination of probable cause was made, Mr. Briggs' complaint was assigned to an ALJ for adjudication. *See,* W. Va.Code § 5–11–10 (1994).

Commission. This appeal was ultimately denied and the ALJ's decision was affirmed.

Thereafter, a revised order was entered by the ALJ requiring *in camera* disclosure of the allegedly privileged material to the ALJ by August 28, 2009. The petitioners then filed the instant petition for a writ of prohibition with this Court. On October 8, 2009, this Court granted a rule to show cause against the respondents returnable before this Court on January 13, 2010, directing the respondents to show cause, if any, why a writ of prohibition should not be awarded against Respondent ALJ.

## II.

## STANDARD OF REVIEW

The Petitioners assert before this Court that the ALJ below exceeded her legitimate powers in ordering the disclosure of allegedly privileged material for *in camera* review. We have previously recognized that "[w]hen a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate." Syllabus Point 3, *State ex rel. U.S. Fidelity and Guar. Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995). Also, we have held that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syllabus Point 1, *State Farm v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992). Finally, with regard to determining the appropriateness of issuing a writ of prohibition, this Court has held:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no

other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). With these principles to guide us, we proceed to address the issues raised by the petitioners.

## III.

## DISCUSSION

We begin our discussion with the general proposition that parties to a proceeding under the West Virginia Human Rights Act "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." 77 C.S.R. § 2–7.17.a. (Jan. 1, 1999).[2] The petitioners assert that the audio recording of the executive session at issue is not discoverable nor available for *in camera* inspection by the ALJ because it contains privileged material. According to Rule 501 of the West Virginia Rules of Evidence, "[t]he privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law except as modified by the Constitution of the United States or West Virginia, statute or court rule."[3] This rule "limits privileges to those

---

2. The language of the state rule governing discovery in Human Rights Act cases is the same as language in West Virginia Rule of Civil Procedure 26(b)(1), which governs civil procedure in all trial court actions.

3. Evidentiary issues in a proceeding before an ALJ of the Human Rights Commission generally are governed by the West Virginia Rules of Evidence except as modified by the Administrative Procedures Act or contrary to the Human Rights

provided for by the Constitution, statute, or common law." Franklin D. Cleckley, Vol. 1, *Handbook on Evidence for West Virginia Lawyers*, § 5-1(C)(2) at 5-10 (2000).

## A.

▆▆▆ In the instant case, the petitioners argue that an *in camera* inspection by the administrative law judge of the audio recording of the executive session in question would violate several privileges. This Court will first consider whether the ALJ's inspection of the allegedly privileged material would violate the attorney-client privilege and the work product doctrine.[4] The petitioners' basis for claiming these privileges is that the advice of the petitioners' counsel was discussed during the executive session. The crux of the petitioners' argument is that nothing in our law supports the claim that a trier of fact is permitted to review the substance of a party's allegedly privileged communications. According to the petitioners, such an inspection by an ALJ would violate the sanctity of the attorney-client privilege. While the petitioners acknowledge that this Court has recognized the power of a circuit court to examine allegedly privileged materials, the petitioners contend that these exceptions are limited to situations involving an alleged crime or fraud and alleged bad faith in settling insurance claims.

We find the petitioners' argument to be without merit. The United States Supreme Court has indicated that it is proper for federal courts to conduct an *in camera* inspection of allegedly privileged material. Specifically, that Court has explained:

disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege. Indeed, this Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection, see *Kerr v. United States District Court for Northern District of Cal.*, 426 U.S. 394, 404-405 [96 S.Ct. 2119, 48 L.Ed.2d 725] (1976), and the practice is well established in the federal courts. See, *e.g.*, *In re Antitrust Grand Jury*, 805 F.2d 155, 168 (C.A.6 1986); *In re Vargas*, 723 F.2d 1461, 1467 (C.A.10 1983); *United States v. Lawless*, 709 F.2d 485, 486, 488 (C.A.7 1983); *In re Grand Jury Witness*, 695 F.2d 359, 362 (C.A.9 1982).

*United States v. Zolin*, 491 U.S. 554, 568-569, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).

▆▆▆ Likewise, this Court has recognized that it is appropriate for a circuit court to examine allegedly privileged materials *in camera* to determine whether the materials are privileged. In *State ex rel. Shroades v. Henry*, 187 W.Va. 723, 421 S.E.2d 264 (1992), we instructed the circuit court to examine the allegedly privileged records of a medical review organization in an *in camera* hearing which, this Court indicated, is contemplated

---

Act. W. Va.Code § 29A-5-2 (1964); 77 C.S.R. § 2-7.30 (Jan. 1, 1999).

4. "[C]onfidential communications made by a client or an attorney to one another are protected by the attorney-client privilege." Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 26(b)(1), at 697 (2d ed. 2006)(footnote omitted). This Court has held that

In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential. Syllabus Point 2, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979). In their brief to this Court, the petitioners argue that this test should

be utilized by a judicial officer as a predicate to or in lieu of actually examining the allegedly privileged materials *in camera*. This is not correct. Generally, a judicial officer must review the contents of an allegedly privileged communication before she can properly determine whether the communication is privileged. Otherwise, the judicial officer must rely on the mere assertions of the party claiming the privilege.

With regard to the work product doctrine, this Court has explained that the purpose of the doctrine is to prevent the discovery of a lawyer's mental impressions. *State ex rel. Erie Ins. v. Mazzone*, 220 W.Va. 525, 648 S.E.2d 31, 40 (2007). "The work product doctrine provides a qualified immunity to two categories of work products: fact and opinion." *Mazzone*, 220 W.Va. at 532, 648 S.E.2d at 38 (citation omitted). *See also* West Virginia Rule of Civil Procedure 26(b)(3).

in Rule 26(c) of the West Virginia Rules of Civil Procedure.[5] Also, the foremost authority on the West Virginia Rules of Civil Procedure provides that "[w]hen a party asserts that a communication is privileged the trial court should examine the requested materials in an in camera hearing." Cleckley, Davis & Palmer, *Litigation Handbook*, § 26(b)(1), 697 (2d ed. 2006) (citing *State ex rel. Shroades v. Henry, supra.*). Further, in *State ex rel. Westfield Insurance Co. v. Madden*, 216 W.Va. 16, 602 S.E.2d 459 (2004), this Court outlined in the context of a bad faith action against an insurer the general procedure for discovery of material alleged to be privileged. Although *Westfield* was confined to the context of a bad faith insurance action, we indicated elsewhere that "this discovery procedure [outlined in *Westfield* ] should have a general application to discovery of privileged communication in any context." *State ex rel. Nationwide Mut. v. Kaufman*, 222 W.Va. 37, 43, 658 S.E.2d 728, 734 (2008). Accordingly, we held in Syllabus Point 2 of *Kaufman* that

> The general procedure involved with discovery of allegedly privileged documents is as follows: (1) the party seeking the documents must do so in accordance with the reasonable particularity requirement of Rule 34(b) [6] of the West Virginia Rules of Civil Procedure; (2) if the responding party asserts a privilege to any of the specific documents requested, the responding party shall file a privilege log that identifies the document for which a privilege is claimed by name, date, custodian, source and the basis for the claim of privilege; (3) the privilege log should be provided to the requesting party and the trial court; and (4) if the party seeking documents for which a privilege is claimed files a motion to compel, or the responding party files a motion for a protective order, the trial court must hold an in camera proceeding and make an independent determination of the status of each communication the re-

sponding party seeks to shield from discovery. (Footnote added).

Finally, in the case of *Feathers v. West Virginia Bd. of Medicine*, 211 W.Va. 96, 562 S.E.2d 488 (2001), this Court discussed the proper procedure to be followed when a doctor asserts the privacy protections afforded to certain information in a doctor's files. This Court explained:

> As in other instances where a party asserts a privilege, a log of the privileged material should be provided to the Board of Medicine, and the materials provided to a court for *in camera* inspection. *See, e.g., State ex rel. Shroades v. Henry*, 187 W.Va. 723, 421 S.E.2d 264 (1992) (hospital sought to protect hospital peer review documents as statutorily privileged); *State ex rel. U.S. F. & G. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995) (insurance company sought to protect documents as attorney-client privileged). Only that material which is privileged is protected from examination.

211 W.Va. at 105, 562 S.E.2d at 497 (footnote omitted). We believe it is clear from the foregoing authorities that a judicial officer may inspect allegedly privileged materials *in camera* and that such an inspection does not violate the sanctity of the attorney-client privilege or the work product doctrine.

The petitioners assert, however, that even if circuit court judges are permitted to examine allegedly privileged materials *in camera*, an ALJ should not be accorded the same power because an ALJ is a trier of fact. The implication is that an ALJ may be improperly influenced in their fact finding by knowledge of privileged material that is inadmissible at a hearing. We disagree. Administrative law judges who adjudicate Human Rights Act cases are licensed attorneys who are authorized by statute to hold and conduct hearings, to direct the scope of discovery including the consideration of motions to compel and motions for protective orders, to determine all questions of law and fact,

---

5. The language of Rule of Civil Procedure 26(c) is substantially similar to the rules of discovery governing Human Rights Act hearings found in 77 C.S.R. § 2–7.18 through 7.18.i.

6. The language of Rule of Civil Procedure 34(b) is substantially similar to its counterpart in the Code of State Rules governing discovery procedure in proceedings brought pursuant to the Human Rights Act. *See* 77 C.S.R. § 2–7.26 and 7.26.a.

and to render a final decision on the merits of the complaint. W. Va.Code § 5–11–8(d)(3) (1998). As with circuit court judges who conduct bench trials, ALJs are regularly required to rule on evidentiary matters which requires them to consider evidence which is ultimately determined to be inadmissible. In such circumstances, we properly expect the circuit court judge or the ALJ to disregard inadmissible evidence and to render a decision based on the evidence introduced at the trial or administrative proceeding.

Therefore, for the reasons set forth above, we hold that when a party to a case brought under the West Virginia Human Rights Act, W. Va.Code §§ 5–11–1 to 5–11–21, asserts that a communication sought to be discovered is privileged, the administrative law judge should conduct an *in camera* inspection of the requested materials to determine whether the communication is privileged.

### B.

Next, the petitioners allege that the ALJ's order violates an executive session privilege created by the Legislature in the Open Governmental Proceedings Act, W. Va. Code §§ 6–9A–1 *et seq.* This Act generally provides that "all meetings of any governing body shall be open to the public." W. Va. Code § 6–9A–3 (1999). An exception in the Act provides that in specifically prescribed instances, a public body may hold an executive session. An executive session is defined by the Act as "any meeting or part of a meeting of a governing body which is closed to the public." W. Va.Code § 6–9A–2(2) (1999). Relevant to the instant case is the Act's provision that a governing body may conduct an executive session to consider "[m]atters arising from the . . . employment . . . of a . . . prospective public officer or employee[.]" W. Va.Code § 6–9A–4(b)(2)(A) (1999).[7]

As noted above, Rule of Evidence 501 limits privileges to those provided for by the Constitution, statute, or common law. An executive session privilege is not provided for in our State Constitution or common law. Therefore, we must determine whether the Legislature intended to create an executive session privilege in the Open Governmental Proceedings Act. Our review of the language of the Act indicates to this Court that the Legislature did not so intend. In determining legislative intent, we consider the precise words used by the Legislature. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). A plain reading of the Open Governmental Proceedings Act establishes that the Act is completely silent on the issue of whether civil litigants may obtain access through discovery to information related to executive session proceedings.

The Legislature plainly expressed its intent in enacting an executive session exception to the open proceedings provision in its declaration of policy contained in W. Va.Code § 6–9A–1. This code section provides in pertinent part:

The Legislature finds, however, that openness, public access to information and a desire to improve the operation of govern-

---

7. W. Va.Code § 6–9A–4 (1999), provides, in part:
(a) The governing body of a public agency may hold an executive session during a regular, special or emergency meeting, in accordance with the provisions of this section. During the open portion of the meeting, prior to convening an executive session, the presiding officer of the governing body shall identify the authorization under this section for holding the executive session and present it to the governing body and to the general public, but no decision may be made in the executive session.
(b) An executive session may be held only upon a majority affirmative vote of the members present of the governing body of a public agency. A public agency may hold an executive session and exclude the public only when a closed session is required for any of the following actions.
* * *
(2) To consider:
(A) Matters arising from the appointment, employment, retirement, promotion, transfer, demotion, disciplining, resignation, discharge, dismissal or compensation of a public officer or employee, or prospective public officer or employee unless the public officer or employee or prospective public officer or employee requests an open meeting[.]

ment do not require nor permit every meeting to be a public meeting. The Legislature finds that it would be unrealistic, if not impossible, to carry on the business of government should every meeting, every contact and every discussion seeking advice and counsel in order to acquire the necessary information, data or intelligence needed by a governing body were required to be a public meeting. It is the intent of the Legislature to balance these interests in order to allow government to function and the public to participate in a meaningful manner in public agency decisionmaking.

It is clear from this declaration of policy that the Legislature's intent was to balance the benefits of public participation in government meetings with the occasional need for government bodies to obtain necessary information and counsel outside of the public's view. In other words, the Act and its executive session exception are concerned with *the public's* access to government meetings, not what may or may not be obtained by means of civil discovery. Mr. Briggs is not simply a member of the public but a party to a discrimination claim with a critical interest in whether the executive session included discussions indicating unlawful motives that would support his claim.[8] Therefore, the executive session exception has no applicability to Mr. Briggs' efforts to discover the recording of the executive session.

This Court also is mindful when considering the recognition of evidentiary privileges that

"For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule."

*United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950) (quoting *Wigmore, Evidence* § 2192 (3d ed.)). We are also aware that an evidentiary privilege "is not without its costs. Since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *United States v. Zolin,* 491 U.S. at 562, 109 S.Ct. 2619 (citations and internal quotation marks omitted). In the instant case, the recognition of an executive session privilege is not necessary to protect matters discussed in an executive session from public scrutiny.[9]

Moreover, our decision herein is supported by courts in other jurisdictions that have addressed this issue and have declined to find that similar open meetings statutes create an executive session privilege. *See, e.g., State v. District Judges for Chase County,* 273 Neb. 148, 728 N.W.2d 275, 279–80 (2007) (finding that "[i]n view of the fact that the Open Meetings Act contains no language related to a closed session discovery privilege, we conclude that no such privilege exists in Nebraska"); *Springfield Local Sch. Dist. Bd.*

---

8. During oral argument before this Court, the petitioners asserted that Mr. Briggs waived his right to discover the executive session recording because he did not request that the County Commission consider his employment in an open meeting as permitted under the Open Governmental Proceedings Act. This assertion is not well taken. A complainant in a civil action should not be compelled to have his employment application discussed in a public meeting in order to have access to the substance of those discussions for discovery purposes.

9. This Court believes that recognizing an executive session privilege would have several detrimental effects. For example, it would provide public employees or prospective employees with less protection from civil discovery in employment discrimination claims than that provided to private employees or prospective employees. Private employers generally cannot shield discussions regarding employment decisions from discovery. The fact that Mr. Briggs applied for a public employment position instead of a position in the private sector should not determine his ability to engage in legitimate discovery pursuant to proving a claim of unlawful discrimination.

Also, an executive session privilege would make it very difficult for complainants like Mr. Briggs to prove their cases. While the Open Governmental Proceedings Act provides that decisions must be made in a public hearing, the reasons for these decisions, which may constitute critical motive evidence in employment discrimination cases, will usually be discussed in an executive session.

*of Education v. Ass'n of Pub. Sch. Employees*, 106 Ohio App.3d 855, 667 N.E.2d 458, 467 (1995) (ruling that "there is no absolute privilege to be accorded discussions held in executive session [although] a trial court, in its discretion, may limit discovery"); *Dillon v. City of Davenport*, 366 N.W.2d 918, 921 (Iowa 1985) (open meetings act "does not specify that the discussions at the closed meeting acquire the status of confidential communications which are privileged from any use other than specified"); *Connick v. Brechtel*, 713 So.2d 583, 587 (La.Ct.App.1998) (finding "the fact that some matters may be discussed in executive session does not render the ... discussions and actions taken in executive session privileged"); *Sands v. Whitnall School Dist.*, 312 Wis.2d 1, 754 N.W.2d 439 452 (2008) (finding "no language in our own open meetings laws indicating that our legislature intended to create a broad discovery privilege for communications occurring in closed sessions of governmental bodies").

The petitioners further contend that permitting discovery of discussions conducted in executive session will impede a full and frank discussion of the issues in such sessions. We disagree. Nothing in our decision herein impedes the purpose for which the Legislature enacted the executive session exception to the Open Governmental Proceedings Act. Government bodies can still freely consider and discuss in closed meetings all relevant information necessary to lawfully and efficiently conduct government business. We simply reaffirm the rights of a litigant in a civil action to discover potentially relevant evidence of unlawful conduct arising from an executive session of a government body.

Finally, this Court is convinced that while there is no compelling reason to shield executive session discussions from discovery, there are compelling reasons not to do so. The very notion of an executive session privilege is offensive to the ideal that all citizens have equal access to a fair and unbiased system of justice regardless of the identity of the alleged wrongdoer. Recognition of an executive session privilege would have the pernicious effect of immunizing public agencies from civil liability for any conduct engaged in during executive sessions. While the Open Governmental Proceedings Act provides that no decisions are to be made in executive session, nothing prevents members of a government body from actually making their decision in executive session and then merely formalizing that decision in an open session.

■ Accordingly, for the foregoing reasons, we hold that the provision of the Open Governmental Proceedings Act, W. Va.Code §§ 6–9A–1 to 6–9A–12, which recognizes in specific and limited circumstances the right of governing bodies to meet in an executive session which is closed to the public is not intended to prevent the legitimate discovery in a civil action of matters discussed in an executive session which are not otherwise privileged.

*C.*

■ The third assignment of error raised by the petitioners is that the ALJ's order providing for an *in camera* review of the allegedly privileged materials constitutes a violation of the separation of powers doctrine by empowering an ALJ, who is a member of the executive branch, to negate a privilege created by the Legislature. Our resolution of the petitioners' other assignments of error disposes of this assignment of error as well. We have found that the Legislature did not create an executive session privilege in the Open Governmental Proceedings Act. We have further ruled that an *in camera* review by a judicial officer of allegedly privileged material does not negate any privilege attached to the material. We deem it important, however, to make clear that a determination by a judicial officer of a party's right to discover materials that are allegedly protected by a statutorily created evidentiary privilege is not a violation of separation of powers doctrine. In Syllabus Point 7 of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), this Court held that "[t]he West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts. These rules constitute more than a mere refinement of common law evidentiary rules, they are a comprehensive reformulation of them." This means that judicial officers ap-

plying the Rules of Evidence remain the final arbiters of the admissibility of evidence in a legal proceeding, not the Legislature.

### D.

■ Finally, the petitioners aver that the ALJ committed error by relying on language in *Peters v. Commission of Wood County*, 205 W.Va. 481, 519 S.E.2d 179 (1999) concerning waiver of the attorney-client privilege. While the ALJ's reason for quoting the language from *Peters* regarding waiver is not clear, this Court cautions that a party's mere reliance on the attorney-client privilege to shield evidence from discovery does not constitute a waiver of the privilege. This Court has explained that an attorney's legal advice only "becomes an issue where a client takes affirmative action to assert a defense and attempts to prove that defense by disclosing or describing an attorney's communication." *Canady*, 194 W.Va. at 442 n. 16, 460 S.E.2d at 688 n. 16 (citations omitted). We note nothing in the pleadings or exhibits in this case to suggest that the petitioners have taken the affirmative step of placing the legal advice they received at issue thereby waiving their claim of privilege.

### IV.

### CONCLUSION

For the reasons set forth above, this Court concludes that the ALJ did not clearly err as a matter of law in ordering the petitioners to produce the audio recording of an allegedly privileged discussion for *in camera* review. Accordingly, we deny the writ of prohibition prayed for by the petitioners.

Writ Denied.

Justice WORKMAN concurs and reserves the right to file a concurring opinion.

Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

KETCHUM, J., dissenting:

I respectfully dissent from the majority opinion, because I believe that governmental bodies cannot operate effectively if their executive session (closed session) discussions are subject to lawsuits. The majority opinion essentially eviscerates a governing body's ability to freely discuss anything—no matter how embarrassing it might be to a public employee—behind closed doors.

The Legislature allows governing bodies to go into closed session only in a few specifically described instances. The purpose for allowing these severely limited closed sessions is to allow the Government to function properly in a few delicate areas, such as to discuss employment questions that might be embarrassing to an employee. The few exceptions to open meetings permit the public to observe and participate in their government's decision making, but allow closed sessions on delicate matters. *W.Va.Code*, 6–9a–1 [1999].

Prior to 1999, the West Virginia Open Meetings Act implied that minutes of closed sessions were required. The Act, when amended in 1999, made plain that executive session minutes, "if any are taken," are not available for inspection. *W.Va.Code*, 6–9a–5 [1999]. If the Legislature intended to make the discussions in executive session subject to lawsuits, it would have required minutes or recordings of the executive sessions of governing bodies.

It must be remembered that no vote or action can be taken in executive session. *W.Va.Code*, 6–9a–4(a) [1999]. Any vote on a matter considered in executive session must be taken later in the public meeting. This allows for public discussion on the matter by any member of the governing body.

In addition, I believe that the plaintiff is statutorily estopped from discovering the discussions that took place in executive session. The plaintiff was seeking employment with the defendant. The meeting to discuss his employment was properly noticed to the public. *W.Va.Code*, 6–9a–4(b)(2)(A) allows a governing body to go into executive session to discuss the prospective employment of a prospective employee *unless* the prospective employee "requests an open meeting" on the subject. In other words, the affected prospective employee can prohibit an executive session to consider his or her employment. The plaintiff did not make this request and is equitably estopped from obtaining the execu-

tive session discussion, recording, or minutes in a lawsuit.

It is clear that West Virginia has a very expansive open meeting law that allows for public scrutiny of government decisions. A public body should be permitted to go into executive session for the limited reasons specified in the Open Governmental Proceedings Act, without those private discussions being the subject of a lawsuit.

Accordingly, I dissent.

WORKMAN, Justice, concurring:

(Filed Feb. 1, 2010)

The majority's decision is correct and well-reasoned. I write separately to reiterate that the Separation of Powers Doctrine and a lengthy body of case law make it absolutely clear that judicially-created rules relating to the function of the judicial branch of government, such as the West Virginia Rules of Evidence, will always trump any legislatively-created statutes.

The Separation of Powers Clause of the West Virginia Constitution provides, in relevant part, that "[t]he legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others[.]" W.Va. Const. art. 5, § 1. Moreover, in Syllabus Point 1 of *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981), this Court reiterated the principle that: "Article V, section 1 of the Constitution of West Virginia which prohibits any one department of our state government from exercising the powers of the others, is not merely a suggestion; it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed." Furthermore, this Court has never "hesitated to utilize the doctrine where we felt there was a direct and fundamental encroachment by one branch of government into the traditional powers of another branch of government." *Appalachian Power Co. v. PSC,* 170 W.Va. 757, 759, 296 S.E.2d 887, 889 (1982). *See, e.g., State ex rel. West Virginia Citizens Action Group v. West Virginia Economic Dev. Grant Comm.,* 213 W.Va. 255, 580 S.E.2d 869 (2003) (finding statute that

gave legislature a role in appointing members of the West Virginia Economic Grant Committee violated Separation of Powers Clause); *State ex rel. Meadows v. Hechler,* 195 W.Va. 11, 462 S.E.2d 586 (1995) (finding statute which permitted administrative regulations to die if legislature failed to take action violated Separation of Powers Clause); *State ex rel. State Bldg. Comm'n v. Bailey,* 151 W.Va. 79, 150 S.E.2d 449 (1966) (finding statute naming legislative officers to State Building Commission violated Separation of Powers Clause).

It has long been well-settled that this Court "shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process practice and procedure, which shall have the force and effect of law." W.Va. Const. art. 8, § 3. Likewise, "[u]nder article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law." Syllabus Point 1, *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988).

In the instant case, the underlying issue surrounds a potential conflict between a legislatively-created statute and rules on admissibility of evidence promulgated by this Court in the Rules of Evidence and case law. That conflict is created by the Appellant seeking to have this Court hold that the statute at issue trumps a judicial decision as to the admissibility of evidence. Although the statute at issue here is valid and not in and of itself intrusive into judicial powers, the interpretation which Petitioners seek to have this Court adopt would violate the Separation of Powers. This Court has made it abundantly clear through numerous prior decisions that statutes that conflict with rules and principles promulgated by this Court as to the admissibility of evidence will be invalidated. *See, e.g., Games–Neely ex rel. West Virginia State Police v. Real Property,* 211 W.Va. 236, 565 S.E.2d 358 (2002) (invalidating a statute that was in conflict with Rule 60(b)); *West Virginia Div. of Highways v. Butler,* 205 W.Va. 146, 516 S.E.2d 769 (1999)

(invalidating a statute that was in conflict with W. Va. R. Evid., Rule 702); *Mayhorn v. Logan Med. Found.*, 193 W.Va. 42, 454 S.E.2d 87 (1994) (invalidating a statute that was in conflict with W. Va. R. Evid., Rule 702); *Williams v. Cummings*, 191 W.Va. 370, 445 S.E.2d 757 (1994) (invalidating a statute that was in conflict with Trial Court Rule XVII); *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994) (invalidating a statute that was in conflict with W. Va. R. Evid., Rule 702); *State v. Davis*, 178 W.Va. 87, 357 S.E.2d 769 (1987), *overruled on other grounds* by *State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994) (invalidating a statute that was in conflict with W. Va. R.Crim. P., Rule 7); *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985) (invalidating a statute that was in conflict with W. Va. R.App. P., Rule 23); *State ex rel. Quelch v. Daugherty*, 172 W.Va. 422, 306 S.E.2d 233 (1983) (holding that legislature could not enact law regulating admission to practice and discipline of lawyers); *Stern Bros., Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977) (invalidating statutes that conflicted with the Court's administrative rules setting out a procedure for the temporary assignment of a circuit judge in the event of a disqualification of a particular circuit judge); *Laxton v. National Grange Mut. Ins. Co.*, 150 W.Va. 598, 148 S.E.2d 725 (1966) (invalidating a statute that conflicted with W. Va. R. Civ. P. Rule 11), *overruled on other grounds* by *Smith v. Municipal Mut. Ins. Co.*, 169 W.Va. 296, 289 S.E.2d 669 (1982); *Montgomery v. Montgomery*, 147 W.Va. 449, 128 S.E.2d 480 (1962) (invalidating a statute that conflicted with W. Va. R. Civ. P., Rule 80); and Syllabus Point 5, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999) ("The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect.").

The majority cites Syllabus Point 7 of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), which provides, in part, that "[t]he West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts."

Writing for the Court in *Derr*, Justice Franklin Cleckley, West Virginia's pre-eminent authority on evidence, stated: "These rules constitute more than a mere refinement of common law evidentiary rules; they are a comprehensive reformulation of them." Justice Cleckley further explained:

As the United States Supreme Court declared in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, [587], 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469, 479 (1993), the Federal "Rules occupy the field." (Citation omitted). A similar construction has been given to the West Virginia Rules. *See Wilt v. Buracker*, 191 W.Va. 39, 44, 443 S.E.2d 196, 201 (1993), cert. denied, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994) (citing the United States Supreme Court's determination that the *Frye* rule, *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013 (1923), was inconsistent with Rule 702). Thus, the Rules of Evidence impliedly repeal prior decisional admissibility rules that have not been codified.

192 W.Va. at 177–178, 451 S.E.2d at 743–744. The Court in *Derr* further provided:

Again, referring to the Federal Rules of Evidence, the United States Supreme Court in *United States v. Abel*, 469 U.S. 45, 51–52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450, 457 (1984), quoted the Reporter's comment for the Advisory Committee which drafted the Rules and stated: " 'In principle, under the Federal Rules no common law of evidence remains. "All relevant evidence is admissible, except as otherwise provided...." In reality, of course, the body of common law knowledge continues to exist, though in the somewhat altered form of a source of guidance in the exercise of delegated powers.' [Citation omitted]."

*Id.*

In the case at hand, the dissent primarily focuses on the fact that W.Va.Code § 6–9a–5 (1999), does not allow for inspection of notes taken during executive session meetings, and that "the majority opinion essentially eviscerates a governing body's ability to freely discuss anything—no matter how embarrassing it might be to a public employee—behind closed doors." This, however, is **not** the result of the majority's opinion. It is impor-

tant to point out that the order complained of by the petitioners simply directs them to produce for *in camera* inspection by the administrative law judge an audio recording of an executive session meeting in which the petitioners discussed hiring an applicant to fill one of two vacancies in the Marshall County Communication 911 Department. The ALJ did not order that the audio recording be released to the public. The majority correctly explains that nothing in its opinion "impedes the purpose for which the Legislature enacted the executive session exception to the Open Governmental Proceedings Act." The majority opinion simply reaffirms the rights of litigants in civil actions "to discover potentially relevant evidence of unlawful conduct arising from an executive session of a government body." This decision will have no bearing on the operation of executive sessions as governmental bodies will still be able to freely discuss and consider all relevant and necessary information required to conduct government business during a meeting which qualifies as an executive session closed meeting under the law.

Therefore, in light of a very consistent and lengthy line of case law supporting the judicial branch's authority as the final arbiters of the admissibility of evidence in a legal proceeding, I respectfully concur.