**FILED**

**June 14, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.J., N.K., A.K., and B.K.**

**No. 21-0591** (Putnam County Nos. 20-JA- 73 through 76)

**MEMORANDUM DECISION**

Petitioner Mother E.J. by counsel Benjamin Freeman appeals the Circuit Court of Putnam County's June 9, 2021, order terminating her parental rights to M.J., N.K., A.K., and B.K.[1]  Both the West Virginia Department of Health and Human Resources (DHHR), by counsel Patrick Morrisey, Michael R. Williams, and Steven R. Compton, and the guardian ad litem, Rosalee Juba-Plumley, filed responses in support of the circuit court's order.  On appeal, Mother argues that the circuit court erred by adjudicating her as an abusive and neglectful parent and by terminating her parental rights.  We find a memorandum decision appropriate under Rule 21 of the Rules of Appellate Procedure because this case presents no substantial question of law or fact.

On August 1, 2020, the DHHR received a referral that Mother's boyfriend, A.S., had sexually abused Mother's daughter, M.J, while residing in Mother's home.  The referral arose after Mother took M.J. to the emergency room for evaluation the day another adult family member told her that M.J. reported sexual abuse to them.[2]  When CPS Worker Seth Greensage interviewed M.J. on August 6, 2020, M.J. refused to talk about the alleged sexual abuse.  But a few weeks later, on September 16, 2020, Maureen Runyon, a qualified expert in forensic interviewing, interviewed M.J. at the CAMC Child Advocacy Center in Charleston, West Virginia.  There, M.J. reported several occasions where A.S. sexually assaulted her, sometimes by intercourse.  She also reported that Mother knew of the allegations but did not believe her.  The same day, Dr. Joan Philips, the co-medical director of the Child Advocacy Center, physically examined M.J. and reported that her findings strongly indicated sexual abuse.  Based on the findings and consistent statements M.J. later gave to a police investigator, the State charged A.S. with sexual assault, sexual abuse, and

---

[1]  Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved.  *See e.g. In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R.*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005).

[2]  The record does not provide the date Mother took M.J. to the emergency room, but according to Mother's testimony, she took M.J. the day she first learned of the allegations.  The DHHR and police investigations ensued after M.J.'s emergency room visit.

sexual abuse by a parent, guardian, custodian, or person in a position of trust, and the police arrested him on September 21, 2020.

On September 29, 2020, Mr. Greensage interviewed Mother who reported that she confronted A.S. and took M.J. to the hospital the day she learned of the allegations, and she recounted several instances where M.J. had allegedly fabricated rape allegations against others. On October 7, 2020, the DHHR filed an abuse and neglect petition against Mother alleging that she physically and mentally abused M.J. and failed to provide necessitates to her children. The petition also alleged, among other things, that Mother threw M.J. to the ground several times, called her a bad daughter, and told her to "f**k off."

The circuit court held adjudicatory hearings on November 20, 2020, December 17, 2020, and January 29, 2021.[3] Dr. Philips testified that M.J.'s physical exam revealed conditions "highly suggestive of sexual abuse and it was consistent with the disclosure." She also testified that "[Mother] had some doubt that day" about whether the abuse happened. Patrolman Alecia Powell of the Winfield Police Department testified that when she interviewed Mother, Mother said she did not fully believe M.J. She also testified that officers found Mother with A.S. when they executed the search and arrest warrants against A.S. Ms. Runyon testified about M.J.'s graphic sexual assault disclosures and that M.J. reported overhearing Mother telling others "she is accusing him of raping her." Mr. Greensage testified that M.J. disclosed the sexual abuse to him at a September 29, 2020, interview. Mother, during her testimony, denied physically abusing M.J., detailed a time when M.J. reported a false rape allegation while living with her grandmother in Ohio, stated that she believed she took all necessary steps when she learned of M.J.'s allegations against A.S., and claimed that she would cut all ties with A.S. And when asked "[s]o even after you were informed of those physical findings that Doctor Philips found during her examination of the child, you still didn't believe [M.J.'s] disclosure; is that correct?," she responded "[y]es, ma'am that is right. Although I never told her that I did not believe her."

The circuit court adjudicated Mother as an abusive and neglectful parent on April 8, 2021, finding that the medical evidence substantiated M.J.'s claims and that Mother did not believe M.J. despite it. The circuit court specifically found that Mother "subjected [M.J.] to emotional injury" by disbelieving her and put the other children at risk since they lived in the home when the abuse occurred.

On June 3, 2021, the circuit court conducted a dispositional hearing. Neither party presented witnesses, but their counsel presented arguments. Mother's counsel stated that "she's never come asking for an improvement period[]" and that "[Mother] understands she's not going to be in [M.J.'s] life. And really, that's probably best for everyone involved. But I don't think it's the same case with the three younger kids." The DHHR stated during its argument that Mother

---

[3] The circuit court heard testimony from different witnesses at each hearing and conducted the hearings over the three separate dates for scheduling purposes and because Mother moved for continuances to investigate facts related to witness testimony.

did not appear for one Multidisciplinary Team (MDT) meeting and denied responsibility when she participated in later meetings. The guardian ad litem also argued that Mother denied all responsibility at MDT meetings.

On June 9, 2021, the circuit court terminated Mother's parental rights. It found that "[Mother] has failed to acknowledge any wrongdoing . . . ," "is not amenable to treatment services . . . ," and that "[r]eunification . . . is not in the best interest of the children because [Mother] is . . . unwilling to care for or provide for the children; . . . failed to acknowledge any wrongdoing whatsoever; and . . . is not amenable to treatment services."

On appeal, Mother challenges the adjudication and the disposition orders and raises the following assignments of error: (1) "the circuit court improperly considered expert testimony to adjudge the petitioner to be an abusive and neglectful parent," (2) "there is no evidence that the petitioner 'emotionally abused' MJ . . . . ," (3) "there is no evidence that the petitioner failed to protect her children from [A.S.'s] alleged abuse and neglect," and (4) termination was not the least restrictive alternative.

We have established the following standard of review for abuse and neglect appeals:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.[4]

In her first assignment of error, Mother argues that the circuit court clearly erred by ignoring certain testimony in favor of the expert testimony and that "the [c]ourt stated that it gave the expert testimony greater weight *because* they are experts."[5] But the circuit court had no duty to cite all testimony in its order. Instead, it had to make factual findings supported by the record.[6]

---

[4] Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011) (quoting Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996)).

[5] Emphasis in original.

[6] *See* W. Va. R. Civ. P. 52(a).

And we need not belabor the point that we give circuit courts wide discretion to weigh conflicting testimony.[7] The circuit court gave the expert testimony more weight, and Mother fails to show that the circuit court clearly erred by favoring it over the other witnesses' testimonies.

Mother also argues under her first assignment of error that the circuit court erred by relying "on [Ms. Runyon's] opinion that 'she believed [M.J.] to be credible' or Ms. Runyon's and Dr. Phillips['s] opinions that 'they believed the evidence pointed to the child, [M.J.], being sexually abused by [A.S.].'" To support her contention, Mother cites a syllabus point from *State v. Edward Charles L.* that provides:

> Expert psychological testimony is permissible in cases involving incidents of child sexual abuse and an expert may state an opinion as to whether the child comports with the psychological and behavioral profile of a child sexual abuse victim, and may offer an opinion based on objective findings that the child has been sexually abused. Such an expert may not give an opinion as to whether he personally believes the child, nor an opinion as to whether the sexual assault was committed by the defendant, as these would improperly and prejudicially invade the province of the jury.[8]

Mother asks us to reverse the circuit court for relying on testimony she failed to object to. But "[w]here objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal."[9] Even so, Mother misplaces her reliance on *Edward Charles L.*, because Dr. Philips testified about her findings from a physical examination and did not "state an opinion as to whether the child comports with the psychological and behavioral profile of a child sexual abuse victim." And Ms. Runyon's testimony that she found M.J. credible did not "invade the province of the jury," considering Mother was not a criminal defendant in a jury trial. This Court expects a circuit court judge who conducts a bench trial to disregard any inadmissible evidence when rendering a decision.[10] And in this instance, the circuit court made factual findings recounting Ms. Runyon's testimony that included her statement that she found M.J.'s allegations credible, but it made no finding that it relied on the testimony when rendering its decision. Instead, the circuit court's

---

[7] *See e.g. In re S.S.-1*, No. 21-0795, 2022 WL 710945, at *1-3 (W. Va. March 9, 2022) (Memorandum Decision) (rejecting petitioner's argument that the circuit court failed to give "enough weight" to certain testimony).

[8] Syl. Pt. 7, *State v. Charles L.* 183 W. Va. 641, 398 S.E.2d 123 (1990).

[9] Syl. Pt. 1, *State Rd. Comm'n v. Ferguson*, 148 W. Va. 742, 137 S.E.2d 206 (1964).

[10] *State ex rel. Marshall Cty. Comm'n v. Carter*, 225 W. Va. 68, 74, 689 S.E.2d 796, 802 (2010).

findings indicate that it relied on Dr. Philips's and Ms. Runyon's expert opinions about the evidence showing that M.J. was sexually abused.

Also relating to her first assignment of error, Mother argues that Dr. Phillips performed a biased physical examination, because prior to it, she learned about M.J.'s "sexual assault disclosure and that she identified her alleged abuser." But while bias may prime impeachment evidence, Mother cites no authority for her assertion that a doctor's knowledge of a sexual assault allegation invalidates a physical examination conducted during an investigation into the allegation. Indeed, in most instances, a doctor would not physically evaluate a patient for evidence of sexual assault absent a sexual assault allegation. Mother fails to show that the circuit court clearly erred by considering the experts' testimonies about the evidence supporting M.J.'s claims or by presuming the validity of the physical examination.

In her second assignment of error, Mother claims that the circuit court's finding that she emotionally abused M.J. "is not supported by the record, nor is there evidence that [Mother] subjected any of her children to abuse and neglect." She contends that the circuit court adjudicated her based on "the thoughts in her own mind" since she claims she never told M.J. that she did not believe her allegations. She also claims that "all that should have concerned the [c]ourt was [Mother's] conduct subsequent to [M.J.'s] disclosure." And she reiterates her belief that she "did what any parent should—she took her daughter to be examined and removed the potential threat from her home." Also, Mother also asks us to "dissect[] . . .[M.J.'s] credibility and truthfulness" by considering that A.S. "has not been indicted for this 'crime.'"

We disagree with Mother's contention that the evidence does not support the circuit court's finding of emotional abuse. The evidence certainly supports the circuit court's finding that A.S. sexually abused M.J., because M.J. reported that it happened, and a medical expert testified that her evaluation substantiated the claim. The evidence, likewise, supports the circuit court's finding that M.J. knew her mother did not believe her and was emotionally injured by her Mother's conduct. The circuit court did not adjudicate Mother for unshared thoughts, as she contends; it adjudicated her because it found that her boyfriend sexually abused M.J. and Mother denied that it happened despite the contrary evidence. The DHHR presented evidence that officers located Mother with A.S. when they arrested him and after Mother knew about M.J.'s allegations. The objective evidence of her continued relationship with A.S.—despite knowledge of M.J.'s allegation—and her consistent denial that A.S. sexually abused M.J. aligns with M.J.'s disclosure that she knew her mom did not believe her. And Ms. Runyon's testimony that "in my experience, it also is emotionally as harmful, if not more so, that they're not believed by their parent, can be more detrimental than the actual abuse itself[]" supports the circuit court's finding that Mother's manifest disbelief inflicted emotional injury upon M.J.

Also, the circuit court disagreed with Mother's claim that she did what "any parent should" after M.J.'s disclosure—it refused to condone her continued association with the A.S. after learning of M.J.'s medically substantiated sexual assault claims against him. Mother urges us to

5

dissect M.J.'s credibility and reverse the circuit court based on the conflicting evidence that, among other things, M.J. had a history of lying, "the other children did not believe [M.J.'s] allegations," that M.J. made unsubstantiated allegations about other conditions in the home, and Mother's testimony that "this entire quagmire was caused likely because she caught [M.J.] stealing money from her purse shortly before these disclosures were made." But as we have held "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."[11] Evidence supported the circuit court's finding that Mother inflicted emotional injury upon M.J. by disbelieving her substantiated allegations, and we refuse to disturb the finding.

In her third assignment of error, Mother argues that the DHHR presented no evidence that she failed to protect M.J., N.K., A.K., and B.K. But we have held that "termination of parental rights of a parent of an abused child is authorized . . . where such nonparticipating parent supports the other [custodian's] version as to how a child's injuries occurred, but there is clear and convincing evidence that such version is inconsistent with the medical evidence."[12] An abused child is "[a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts . . . emotional injury, upon the child *or another child in the home*."[13] When a circuit court uses abuse suffered by one child to terminate a parent's rights to children who live with that child, "the DHHR must [also] present clear and convincing evidence that the [children's]'health or welfare is harmed or threatened.'"[14] In this instance, the evidence supports the circuit court's finding that A.S. sexually abused M.J. in Mother's home, Mother consistently denied that it happened, and Mother supported A.S.'s innocence despite M.J.'s contrary allegations and the medical evidence that supported them. And we will not disturb the circuit court's supported finding "[i]f the [circuit] court's account of the evidence is plausible in light of the record viewed in its entirety."[15] So, the circuit court acted within its discretion by finding that "even though the children. [A.K., N.K., and B.K.] were not direct victims of abuse by [Mother], they were at risk of being abused and are abused children under W. Va. Code § 49-1-201."

---

[11] *In re J.F.*, No. 16-0851, 2017 WL 923431, at *3 (W. Va. February 21, 2017) (quoting *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997)).

[12] *Matter of Scottie D.*, 185 W. Va. 191, 197, 406 S.E.2d 214, 220 (1991).

[13] W. Va. Code § 49-1-201 (emphasis added).

[14] *In re Christina L.*, 194 W. Va. 446, 452, 460 S.E.2d 692, 698 (1995).

[15] *Tiffany Marie S.*, 196 W. Va. at 231, 470 S.E.2d at 186 (citing *In re Jonathan Michael D.*, 194 W. Va. 20, 25, 459 S.E.2d 131, 133 (1995)).

Mother's final assignment of error asserts that the circuit court erred by terminating her parental rights because less restrictive alternatives existed. But we have held that

> [t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected.[16]

There is no reasonable likelihood under West Virginia Code § 49-4-604(d) when "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."[17] And we have reiterated that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.[18]

In this instance, Mother denied—and continues to deny, despite the circuit court's conclusive finding—that A.S. sexually abused M.J., denied that she emotionally abused M.J. by disbelieving her substantiated claims, did not request an improvement period, and refused all services. Her conduct demonstrated an inadequate capacity to solve the problem or prevent future abuse, and the circuit court acted within its discretion by finding no reasonable likelihood that she could improve the conditions of abuse and neglect.

Evidence supported the circuit court's finding that A.S. sexually abused M.J., that Mother disbelieved M.J despite medical evidence substantiating her claims, that M.J. knew of Mother's disbelief, and that the disbelief emotionally injured M.J. Also, evidence supported the circuit court's finding that the abuse M.J. suffered posed a risk to the health and welfare of the other children in the home—especially considering Mother denied any problems throughout these

---

[16] Syl. Pt. 5, *In re Kristen Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)).

[17] W. Va. Code § 49-4-604(d).

[18] *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)) (citation omitted).

proceedings. And the circuit court did not clearly err by terminating Mother's parental rights. Her failure to acknowledge the problems demonstrated an inadequate capacity to solve them.

Affirmed.

**ISSUED:** June 14, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead

**DISSENTING:**

Justice William R. Wooton

Justice C. Haley Bunn, not participating

No. 21-0591 – *In re: M. J., et al*

WOOTON, J., dissenting:

The majority improperly affirms the circuit court's termination of petitioner's parental rights to three additional children in the home who were not the subject of the allegations of abuse. While rights to other children in the home who are not direct subjects of abuse may be terminated, our caselaw is clear that the court may not do so without undertaking an individual assessment of whether their "'health or welfare is harmed or threatened'" and termination is in their best interests. *See In re Christina L.*, 194 W. Va. 446, 452, 460 S.E.2d 692, 698 (1995). Here, the circuit court terminated petitioner's rights to these other children in absence of any such analysis and without even requiring DHHR to present evidence in support. Accordingly, I respectfully dissent.[1]

---

[1] Because petitioner is ostensibly amenable to M. J. remaining in a placement outside of the home requiring adjudication as a prerequisite, I yield to the majority's affirmance of petitioner's adjudication and termination as to M. J. However, I take issue with its insubstantial analysis of petitioner's assertion of error as to the expert's testimony regarding M. J.'s credibility and the circuit court's unmistakable reliance upon it. More specifically, I caution against relying upon the majority's suggestion that a circuit court may merely "disregard" inadmissible evidence, particularly as pertains to expert witnesses. West Virginia Code § 49-4-603 (2015) makes clear that expert testimony in the context of abuse and neglect proceedings is "subject to . . . the rules of evidence." Here, the circuit court specifically and repeatedly referenced Ms. Runyon's improper testimony that she found M. J. credible and any suggestion that its order did not indicate

8

First, in violation of this Court's recent admonition, DHHR and the guardian ad litem sought and obtained termination of petitioner's parental rights, but neither presented witnesses nor offered other materials into evidence in support. *See In re K. S.*, No. 20-1030, 2022 WL 1223231, at *7 (W. Va. Apr. 26, 2022) (memorandum decision) (vacating disposition where DHHR failed to offer evidence at dispositional hearing). The circuit court below informally referenced having previously received DHHR's "case plans" and "court summary"; however, none of these items appear in the appendix record nor appear to have been formally admitted into evidence below. Regardless, the majority presumes to affirm the circuit court's disposition without any idea what these informally received materials contain and in the absence of any evidence being presented at the dispositional hearing.

More specifically, the circuit court terminated, and the majority affirms, on the basis of petitioner's unsubstantiated "refusal" of services and lack of participation with multi-disciplinary meetings. However, only the guardian ad litem's report cursorily states that petitioner had not participated in unspecified "services" or attended multi-disciplinary team meetings; none of these assertions are supported by any evidence at the dispositional hearing or elsewhere in the record.[2] In fact, during the hearing, the guardian ad litem contradicted her report, stating that petitioner *had* attended one multi-disciplinary team meeting in May. More importantly for purposes of this Court's analysis, there is no evidence whatsoever in the record that petitioner was offered "services," what those services were, or whether and why they were declined. Given the circuit court's near-exclusive focus on the refusal of services to terminate, this paucity of evidence directly violates our holding that "the burden of proof in a child neglect or abuse case does not

"reliance" on that testimony is disingenuous. In fact, it was because of petitioner's skepticism *in the face of the expert's opinion that M. J. was credible* that the circuit court adjudicated her in the first instance.

While this Court has not had occasion to extend the rule expressed in Syllabus Point seven of *State v. Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990) forbidding experts from opining on a child abuse victim's credibility to abuse and neglect proceedings, this is a fairly universally recognized rule. *See* Gore, Amy G., et al, "CREDIBILITY OF WITNESSES," 31A Am. Jur. 2d Expert and Opinion Evidence § 137 ("Expert testimony on the psychological and emotional traits of abuse victims is typically admissible so long as the witness makes no comment on the alleged victim's credibility."); Amendola, Francis C., et al, "EXPERT TESTIMONY ON CHILD SEXUAL ABUSE OR BATTERED CHILD SYNDROME," 23A C.J.S. Criminal Procedure and Rights of Accused § 1506 ("When particularized testimony concerning a specific victim's credibility is offered, it must be rejected because it usurps the decision-making function of the jury and, therefore, is inadmissible."); ("Social workers' testimony as to their interviews with children, and their conclusions that children were the victims of sexual abuse, have been held to constitute improper vouching on the credibility of the children, during a prosecution for sexual abuse and attempted sexual abuse.").

[2] Notably, the guardian ad litem's report further incorrectly states that petitioner was adjudicated for "failure to protect" M. J. from sexual abuse and failure to provide "food, shelter, and support[.]"—none of which is borne out by the record at any point.

9

shift from the [DHHR] to the parent, guardian or custodian of the child. It remains upon the [DHHR] throughout the proceedings." Syl. Pt. 2, in part, *In re S. C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981). For purposes of this Court's review, the DHHR and circuit court must create a record that permits the Court to exercise its standard of review rather than simply rubber-stamping the circuit court's decision, content that the circuit court was apparently satisfied with the parties' offerings. *See State v. Michael M.*, 202 W. Va. 350, 360, 504 S.E.2d 177, 187 (1998) (remanding where court made post-termination award "without hearing evidence and making conclusions under the applicable standards."); *In re Michael Ray T.*, 206 W. Va. 434, 443, 525 S.E.2d 315, 324 (1999) ("[P]arties are duty-bound to preserve evidence in the record to ensure that this Court may conduct a complete review of the challenged lower court proceedings.").

Not surprisingly, the court's dispositional order reflects this absence of evidence and factual support for termination as to the siblings, generically stating as to all children collectively that petitioner is "presently unwilling and/or unable to provide adequately for the needs of the children[.]" The order finds that petitioner had "not availed herself of any treatment services and is not amenable to treatment services"—evidence of which cannot be found in the appendix record. The order even specifically states that DHHR "has offered *numerous* services to the respondent mother; however, she has failed to participate with the same" yet this Court is without any information as to what the circuit court was referring. (Emphasis added).

The evidentiary insufficiency aside, the circuit court's collective treatment of the children most markedly runs afoul of our caselaw. The dispositional order finds that termination of petitioner's parental rights was in the children's *collective* best interests because petitioner failed to acknowledge wrongdoing by not believing M. J.'s allegations and did not "avail[] herself of any treatment services." Nowhere in the order, transcript of the dispositional hearing, or elsewhere in the appendix record is there any evidence that 1) the individual risk to the health and welfare of N. K., A. K., and B. K. or 2) their best interests were evaluated or considered *independently* of M. J.'s.

It is in this collective treatment of the children that the circuit court and majority most profoundly miss the mark. This collective treatment stems from a failure to carefully examine the case upon which the circuit court relied in terminating petitioner's rights to the siblings— *Christina L.* In that case, this Court noted that the definition of "abused child" statutorily includes other children in the home of an abused child, but who were not the direct subject of abuse:

> "Abused child" means:
>
> (1) *A child whose health or welfare is being harmed or threatened by:*
>
> (A) *A parent,* guardian, or *custodian who knowingly or intentionally inflicts,* attempts to inflict, or knowingly allows another person to inflict, *physical injury or mental or emotional injury*, upon the child **or another child in the home.** . . .

10

W. Va. Code § 49-1-201 (2018) (emphasis added). As a result, the *Christina L.* Court found that "there need not be a showing by the Department that each child in the home is directly abused, either sexually or physically, before termination of parental rights is sought." *Id.* at 452, 460 S.E.2d at 698. Accordingly, the Court issued the following syllabus point:

> Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse *but is at risk of being abused* is an abused child under W. Va. Code, 49-1-3(a) (1994).

*Id.,* 194 W. Va. 446, 460 S.E.2d 692, syl. pt. 2 (emphasis added).[3]

The passage of *Christina L.* which should have guided the circuit court and majority's analysis is nowhere to be found in the order or opinion. However, upon issuing the above syllabus point, the *Christina L.* Court made the following critical caveat, rejecting any argument that the rights to other children in the home must necessarily be terminated and requiring an individualized assessment as to the risk presented to other children:

> We decline, however, to adopt a blanket rule that parental rights must be terminated to all the children residing in the home based merely on the finding that one child is abused. We do not believe this result was intended under the statute. Under W. Va. Code, 49-1-3(a), the Department must present clear and convincing evidence that the child's "health or welfare is harmed or threatened."

*Id.* at 452, 460 S.E.2d at 698.

The circuit court provided no support for its conclusion that by virtue of the highly fact-specific circumstances involving M. J., the other children were somehow "at risk" for similar "emotional abuse." *Christina L.* makes clear that as to physical or sexual abuse, the likelihood of abuse to other children in the home is fairly apparent. Nonetheless, it makes clear that the associated risk to those children—regardless of the nature of the risk—*must be proven by DHHR by clear and convincing evidence.* Here, DHHR offered no evidence whatsoever as to the other children, who were scarcely even mentioned in the dispositional hearing. Given the very fact-specific nature of the underlying allegations, extending the "risk" of "emotional abuse" under these facts to other children in the home simply does not follow.

It is fundamental to our abuse and neglect jurisprudence that "[w]here a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or

---

[3] It is not clear why emotional abuse was not included in the syllabus point; however, the rationale for the holding would apply equally to any of the types of abuse outlined in the statutory definition.

on the record supporting such conclusion, . . . the order is inadequate." Syl. Pt. 4, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001). Both the order and the proceedings below were wholly inadequate to make the necessary findings and analysis as to termination of petitioner's rights to other children in the home. Because the majority affirms the circuit court's failure to require DHHR to adduce sufficient evidence as to the threat of harm to the three siblings' health and welfare and independently assess their best interests, I respectfully dissent.